UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| L.C. Brown, ) | C/A No. 4:08-0224-MBS-TER |
| ) | |
| ) | |
| Petitioner ) | |
| vs ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden of Lieber Correctional Institution, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner, L. C. Brown, ("Petitioner/Brown) is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on January 25, 2008. Respondent filed a motion for summary judgment on April 23, 2008, along with a return and supporting memorandum. On April 24, 2008, Respondent filed a supplemental return and memorandum in support of the motion for summary judgment. The undersigned issued an order filed April 24, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response. On May 5, 2008, Petitioner filed a motion requesting an additional thirty (30) days to respond to Respondent's motion for summary judgment pursuant to the Roseboro order. Thus, plaintiff was given until June 28, 2008, to file a response to the motion for summary judgment. Petitioner has failed to file a response.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## I. PETITIONER'S MOTION FOR DEFAULT JUDGMENT

On April 25, 2008, Petitioner filed a motion for default judgment. (Document #20). Within this motion, Petitioner asserts that Respondent requested an extension of time to respond which was granted by this court and that Respondent was given until April 23, 2008, to file a response. Petitioner asserts that Respondent failed to file a return within the allotted time and default judgment should be entered.

Respondent filed a response to this motion asserting that the motion for default judgment should be denied in that Respondent was granted an order extending the time to respond until April 23, 2008. Respondent asserts that he filed a return and motion for summary judgment on April 23, 2008.

A review of the court's docket sheet reveals that an order was issued on April 4, 2008, granting Respondent's motion for an extension of time to respond until April 23, 2008. Respondent filed a return on April 23, 2008. (See Doc. # 16).  Therefore, it is recommended that this motion for default judgment (Doc. #20) be DENIED.

## II.  RULE 41(B) DISMISSAL

A complaint may be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court. Ballard v. Carlson, 882 F.2d 93 (4th Cir. 1989), cert. denied, 493 U.S. 1084 (1990), and Chandler Leasing Corp. v. Lopez, 669 F.2d 919 (4th Cir. 1982). In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors:

(1)   the degree of plaintiff's responsibility in failing to respond;

2

  (2) the amount of prejudice to the defendant;

  (3) the history of the plaintiff in proceeding in a dilatory manner; and,

  (4) the existence of less drastic sanctions other than dismissal.

<u>Davis v. Williams</u>, 588 F.2d 69 (4th Cir. 1978).

  In the present case, the Petitioner is proceeding <u>pro se</u> so he is entirely responsible for his actions. It is solely through Petitioner's neglect, and not that of an attorney, that no responses have been filed. Even though Petitioner was granted an extension of time to respond, he has still failed to file a response to the motion for summary judgment. Petitioner has not responded to Respondent's motion for summary judgment or the court's order requiring him to respond. No other reasonable sanctions are available. Accordingly, it is recommended that this action be dismissed pursuant to Fed. R. Civ. Proc. 41(b).

  In the alternative, the undersigned will address Respondent's motion for summary judgment.

### III.  PROCEDURAL HISTORY

  The procedural history as set forth by the Respondent in his memorandum has not been disputed by the Petitioner. Therefore, the undersigned will set out the undisputed procedural history as set forth by the Respondent.

  Petitioner is presently confined to Lieber Correctional Institution pursuant to Orders of Commitment from the Clerk of Court from Barnwell County. At the March 2001 term, the Barnwell County Grand Jury indicted Petitioner for armed robbery (01-GS-06-0062) and assault with intent to kill ("AIK") (01-GS-06-0064). **{PCR App. 71-74}**.

  Petitioner was represented at the trial level by Assistant Public Defender Joshua Koger. On

May 25, 2001, Petitioner entered guilty pleas before the Honorable James R. Barber. Judge Barber sentenced Petitioner to twenty-five (25) years for armed robbery and a concurrent ten (10) years for AIK. **{PCR App. 17; 75-76}**.

Petitioner filed a notice of appeal with the South Carolina Court of Appeals from his convictions and sentences. However, on June 27, 2001, the court of appeals dismissed the appeal for failure to serve opposing counsel, and the remittitur was sent down on September 17, 2001. **{PCR App. 20-21}**.

Petitioner next filed a *pro se* Application for Post-Conviction Relief ("APCR") on April 17, 2002 ( 02-CP-06-0106), in which he asserted the following issues:

1. Plea was not voluntary where it is coerced upon counsel's untruthful assurance of arguing for leniency.

2. Counsel rendered an objectively deficient representation by failing to argue for a plea and sentencing under a lesser included offense.

**{PCR App. 22}**. The State filed a Return dated June 24, 2002. **{PCR App. 29}**.

An evidentiary hearing in Petitioner's PCR was held before the Honorable Rodney Peeples on July 17, 2002. **{PCR App. 35}**. Petitioner was present and represented by counsel Dan Williams, Esquire. Petitioner testified at the hearing, and the State called trial counsel. The judge orally denied the PCR application, and on July 29, 2002, issued an Order of Dismissal in which he rejected Petitioner's allegations. **{PCR App. 55}**.

Petitioner then filed a *pro se* "Motion to Appoint New Counsel & Schedule a New PCR Hearing," dated August 13, 2002. **{PCR App. 64}**. Judge Peeples issued an Order denying that motion on September 11, 2002. Petitioner then filed a *pro se* "Rule 52(a)/59(e), SCRCP Motion for Conclusions of Law and to Vacate, Alter, or Amend September 11, 2002, Order." Respondent

4

submitted to the judge a proposed order rejecting this latest motion, to which Petitioner responded with his "Applicant's Objection and Opposition to Respondent: Proposed Order," dated December 9, 2002. Judge Peeples issued an Order denying Petitioner's motion dated December 4, 2002. **{PCR App. 67}**.

Meanwhile, Attorney Williams filed with the state supreme court a notice of appeal from the PCR Order. Aileen P. Clare, of the South Carolina Office of Appellate Defense, was appointed to represent Petitioner in his PCR appeal. On June 4, 2003, Clare filed a "no merit" Johnson[2] Petition for Writ of Certiorari in which she raised the following issue:

> Was petitioner's guilty plea not knowingly and intelligently entered, when the trial court erroneously informed him that he would be eligible or release in seven years?

The State filed a letter return to the Johnson petition on June 6, 2003. Petitioner filed on July 7, 2003 a document entitled "Petitioner's *pro se* issue raised for consideration pursuant to Johnson brief," in which he raised the following issue:

> Whether there is a probative evidence to support the PCR judge's findings that trial counsel's representation was not deficient in communicating sentencing information and that the knowing and voluntary nature of petitioner's guilty plea was not prejudiced by counsel's alleged deficiency and the plea judge's misinformation about parole eligibility.

On September 10, 2003, the South Carolina Supreme Court issued an Order denying the petition for writ of certiorari following the denial of his APCR and granted counsel's request to withdraw as attorney. (See entry number 16-10).

Petitioner next filed on September 30, 2004, a second state court action, which was actually

---

[2] Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

printed on a federal habeas corpus form (04-CP-06-0226). In it, Petitioner raised the following claims:

1. Plea not knowingly and intelligently entered into;

2. Ineffective Assistance of Counsel.

The State filed on January 13, 2005, a Return and Motion to Dismiss the APCR2, in which it asserted that Petitioner was procedurally barred from filing a state habeas petition in the trial court. Petitioner next filed on April 25, 2005, a second PCR ("APCR2"), in which he raised the following claims:

Lack of Subject Matter Jurisdiction.

A hearing was held on these filings on February 8, 2006, before the Honorable Doyet A. Early, III. On September 19, 2006, Judge Early issued an Order in which he merged the state habeas and APCR2, and dismissed them both. Upon information and belief, no appeal was taken from the dismissal of these two actions.

As set forth in Respondent's supplemental return[3], Petitioner filed this third Application for Post-Conviction Relief (APCR3) (2007-CP-06-196), on August 6, 2007, in which he raised the following claims.

1. Ineffective Assistance of Counsel.

2. Appellate attorney failed to file appeal.

Respondent asserts that this action is presently pending and no hearing or other disposition

---

[3] Respondent submitted a supplemental return and memorandum stating that they inadvertently excluded from the procedural history that Petitioner also has a third PCR pending, representing his fourth state court collateral attack. Respondent asserted that this does not change the limitations analysis as Petitioner is "still far out of time." (Doc. # 19).

has been had on the APCR3.

## IV. HABEAS ALLEGATIONS

Petitioner raises the following allegations in his *pro se* Petition for Writ of Habeas Corpus, quoted verbatim:

**GROUND ONE:**    Insufficient Indictment

**Supporting Facts:**   Armed Robbery is insufficient because it fails to allege an necessary element of the charged crime: that a deadly weapon used or represented to have been used in the robbery.

## V. SUMMARY JUDGMENT

On April 23, 2008, the Respondent filed a return and memorandum of law in support of his motion for summary judgment.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the

moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## VI.  STANDARD OF REVIEW

Since Brown filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable

>application of, clearly established Federal law, as determined by the
>Supreme Court of the United States; or (2) resulted in a decision that
>was based on an unreasonable determination of the facts in light of
>the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## VII.   DISCUSSION AS TO STATUTE OF LIMITATIONS

The Respondent asserts that the Petitioner's claims must be dismissed as untimely. Specifically, Respondent asserts that the Petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA.

Respondent argues as follows, quoted verbatim:

> Petitioner's conviction was finalized by the conclusion of direct review on September 17, 2001, when the South Carolina Court of Appeals issued the Remittur after dismissing the appeal for procedural violations. Because Petitioner did not successfully litigate a direct appeal to conclusion on the merits, the ninety (90) day period for seeking certiorari from the United States Supreme Court is not included. . . . Petitioner thus had until September 17, 2002, to file his federal habeas corpus action, unless the period was at any time tolled. . .
>
> Petitioner did not file his APCR until April 17, 2002, so two hundred and twelve (212) days of non-tolled time ran since the period of limitations began on September 17, 2001. The period of limitations was tolled during the pendency of the APCR until no later than September 10, 2003, when the South Carolina Supreme court issued the Remittitur following its Order denying certiorari review on the APCR Order of Dismissal.. . .

(Doc. # 16).

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.[4] Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the <u>latest</u> of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an

---

[3] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. <u>Duarte v. Hershberger</u>, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

>application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a "properly filed" application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

As stated under the procedural history, Petitioner's direct appeal was denied and the Remittiur from the South Carolina Court of Appeals was issued on September 17, 2001. His conviction became final under the provisions of the above cited statute, on September 17, 2001, when the state court of appeals issued the remittitur.[5] Accordingly, the one year time within which to file for federal habeas relief began to run after the issuance of the remittitur on September 17, 2001. As such, Petitioner had until September 17, 2002, to file his habeas petition unless the period was tolled.

Petitioner filed his APCR on April 17, 2002. Therefore, two hundred and twelve (212) days

---

[5] Based on the procedural history before this court, Petitioner did not seek a writ of certiorari in the state supreme court. Therefore, Petitioner is not entitled to the additional period of ninety days in which to seek certiorari review from the United States Supreme Court as the failure to seek certiorari from the Supreme Court of South Carolina precluded him from meeting the jurisdictional requirements of the United States Supreme Court. See Moore v. Padula, 2008 WL 199842 (D.S.C. May 5, 2008). However, even if the ninety (90) days were added to the time period, Petitioner's habeas petition would still be barred by the statute of limitations.

11

of non-tolled time lapsed between the conclusion of direct review and the filing of the PCR application. The period of limitations for filing his federal habeas corpus action was tolled during the pendency of the PCR. The South Carolina Supreme Court issued the remittitur on September 10, 2003. Petitioner filed this habeas petition on January 25, 2008, with a Houston v. Lack, supra, delivery date of January 17, 2008. However, even using the date of January 17, 2008, the time is well outside the limitations period.[6]

In the case of Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit aggregated time periods to conclude that a federal habeas petition was time barred under 28 U.S.C. § 2244(d). In Harris, the Fourth Circuit stated:

> Thus, for Harris, the one-year limitation period imposed by §2244(d) commenced on April 24, 1996. Ten-and-one-half months later, on March 12, 1997, Harris filed his petition for state post-conviction review, which suspended the running of the one-year limitation period. This petition remained "pending" in state courts until January 7, 1998, when the Maryland Court of Appeals denied Harris' application for leave to appeal the denial of his petition. At this point, the clock began running again on the one-year limitation period, expiring one-and-one-half months later, in February 1998. Harris did not file his federal habeas petition until July 22, 1998, six months after his one-year period had expired. Therefore, the petition was time-barred under 28 U.S.C. § 2244(d).

Harris, 209 F.3d at 327.

Petitioner has not presented any evidence to warrant equitable tolling. In the case of Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

---

[6] Petitioner filed a state habeas petition on September 30, 2004, and APCR2 on April 25, 2005. However, the time period for filing his federal habeas petition had already expired before the filing of these documents. Furthermore, the state habeas petition and the APCR2 were dismissed and would not have tolled the time period as they were not a "properly filed" state collateral attack action under 28 U.S.C. §2244(d)(2).

Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000).  As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.  To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation.  We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice).  Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.

The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law.  (J.A. at 328.)  The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P.  6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.)  The district court also found that Rouse's health during the limitations period did not

13

> warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

Applying the law as described in Harris, Petitioner has not presented an extraordinary circumstance beyond Petitioner's control. Harris, 209 F.3d at 331. Likewise, it is well established that a pro se prisoner's ignorance of the law is not a basis to invoke equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Based on the fact that Petitioner has not shown any extraordinary circumstances to warrant equitable tolling, the petition is barred by the statute of limitations.

## VI. CONCLUSION

For the reasons set out above, it is RECOMMENDED that the petition be dismissed for failure to prosecute.

In the alternative, it is RECOMMENDED that Respondent's motion for summary judgment (document #15) be GRANTED in its ENTIRETY, and the petition be dismissed without an evidentiary hearing.

It is further RECOMMENDED that Petitioner's motion for default judgment (document # 20) be DENIED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 28, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

4:08-cv-00224-MBS     Date Filed 08/28/08     Entry Number 25     Page 15 of 15